**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Nyakondo, et al., | No. CV-18-00090-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| Still Water Insurance Company, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 30). The Court now rules on the motion.[1]

**I.    BACKGROUND**

On June 28, 2018, Defendant Stillwater Insurance Company ("Defendant") filed the pending Motion for Summary Judgment (Doc. 30). Plaintiffs Charles and Elizabeth Nyakondo (individually and collectively, "Plaintiffs") filed a Response on July 30, 2018 (Doc. 31). Defendant did not file a reply memorandum. The Court liberally construes Plaintiffs' Complaint (Doc. 1-1) to assert causes of action for breach of contract and bad faith. (Doc. 1-1 at 4–7).[2]

---

[1] Although Defendant requested oral argument on its motion, the Court will not set oral argument because it would not aid the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2] In the case of a pro se complainant, the pleadings must be construed liberally, and the plaintiff must be given the "benefit of any doubt." *Abassi v. I.N.S.*, 305 F.3d 1028, 1032 (9th Cir. 2002) (citations omitted).

**A. Facts**

The following facts are either undisputed or recounted in the light most favorable to the non-moving party. At all relevant times, Plaintiffs' home was insured by Defendant. (Doc. 31 at 2).[3] On April 24, 2017, Plaintiffs' home suffered water damage from a toilet overflow. (*Id.* at 1). Plaintiffs contacted Defendant the same day (*Id.*). The following day, Defendant sent a property claims examiner and an inspector to the home. (*Compare* Doc. 30 at 1–2 *with* Doc. 31 at 2). Defendant also secured temporary lodging for Plaintiffs through a temporary housing placement company, starting April 25, 2017. (Doc. 31 at 3).

On April 26, 2017, Pelican Power, LLC ("Pelican") inventoried Plaintiffs' personal property items that were damaged in the incident and took some of the damaged items into storage. (*Id.*).[4] Pelican valued the totality of Plaintiffs' damaged personal items at $17,931.47. (*Id.* at 6 (citing *Id.* at 19–21)). Plaintiffs sent a copy of this list of damaged items and Pelican's valuation to Defendant's property claims examiner on June 9, 2017. (*Id.* at 7 (citing *Id.* at 38)). Following Defendant's inspection process, Defendant reimbursed Plaintiffs $6,369.44 for the damaged personal property on or around July 27, 2018. (*Id.* at 5–6 (citing *Id.* at 30); *see also* Doc. 30-11 at 2).[5] Plaintiffs disputed the sufficiency of this compensation and requested that Pelican not dispose of any items stored by Pelican. (Doc. 31 at 6–7). Nevertheless, Pelican disposed of Plaintiffs' items without Plaintiffs' consent. (*Id.* at 6).

On May 30, 2017, the temporary housing placement company notified Plaintiffs

---

[3] Neither party provided a copy of the insurance policy, but there does not appear to be any dispute that the water damage incident suffered at Plaintiffs' home is a covered event under the policy.

[4] The Court observes that Pelican is not a party to this lawsuit. Accordingly, any grievances levied by Plaintiffs against Pelican are not redressable in this action.

[5] Elsewhere, Plaintiffs assert that Defendant covered damaged personal items in the amount of $6,624.98. (Doc. 31 at 6). While the record reflects that Defendant issued payment in the amount of $6,369.44, the difference between those two figures is immaterial to outstanding issues before the Court. (*Compare* Doc. 31 at 6 *with* Doc. 30-11 at 2).

Additionally, the Court observes that Defendant's estimated the full cost of Plaintiffs' personal property at $10,615.72 before factoring in applicable depreciation of $4,246.28 to arrive at the $6,369.44 claim payment. (Doc. 30-12 at 2).

1 that they would have to vacate their temporary lodging on June 28, 2017. (*Id.* at 7 (citing *Id.* at 40)). The remodeling company working at Plaintiffs' home, however, did not certify that remodeling work was complete until July 12, 2017. (*Id.* (citing *Id.* at 42)).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id*. 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id*. at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id*. A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id*. at 247–48. However, in the summary

judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

## III. ANALYSIS

Defendant moves for summary judgment on Plaintiffs' claims, which the Court believes sound in bad faith and breach of contract. (Doc. 30). Due to the ambiguity of the Complaint (Doc. 1-1), the Court will address each cause of action in turn.

### A. Bad Faith

Defendant first argues that it is entitled to summary judgment on Plaintiffs' claim for bad faith. (Doc. 30 at 4).

#### 1. Legal Standard

"The tort of bad faith arises when the insurer 'intentionally denies, fails to process or pay a claim without a reasonable basis.'" *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279–80 ¶ 20 (Ariz. 2000) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)). An insured alleging a bad faith claim against his insurer must show that "in the investigation, evaluation, and processing of the claim," the insurer acted unreasonably, and either knew or recklessly disregarded the fact that its conduct was unreasonable. *Id.* at 280 ¶ 22; *Noble*, 624 P.2d at 868. "The first prong of the test for bad faith is an objective test based on reasonableness. The second prong is a subjective test, requiring the plaintiff to show that the defendant insurance company committed consciously unreasonable conduct." *Milhone v. Allstate Ins. Co.*, 289 F.Supp.2d 1089, 1094 (D. Ariz. 2003) (citing *Trus Joist Corp. v. Safeco Ins. Co.*, 735 P.2d 125, 134 (Ariz. Ct. App. 1986)).

In *Zilisch*, the Arizona Supreme Court clarified that considerations such as whether

the claim was fairly debatable are not the beginning and the end of the bad faith analysis. *Zilisch*, 995 P.2d at 280 ¶ 21. "[W]hile fair debatability is a necessary condition to avoid a claim of bad faith, it is not always a sufficient condition." *Id.* at 280 ¶ 22. Nor does the fact that an insurer ultimately pays a claim preclude a finding of bad faith, if the insurer acted unreasonably in its processing of the claim. *Id.* at 279–80 ¶ 20 ("[I]f an insurer acts unreasonably in the manner in which it processes a claim, it will be held liable for bad faith 'without regard to its ultimate merits.' " (citation omitted)).

### 2. Analysis

Plaintiffs implicitly argue that Defendant committed the tort of bad faith by failing to pay the full estimated value of their damaged personal property items stored by Pelican and for poor communication throughout the handling of the claim. (Doc. 31 at 4, 6). First, Plaintiffs point out that there is a discrepancy of over $10,000 in the valuation placed on their damaged property by Pelican and the amount paid to cover the damaged personal property items by Defendant. (*Compare* Doc. 31 at 21 (Pelican's valuation of $17,931.47) *with* Doc. 30-11 at 2 (Defendant's payment of $6,369.44)). Defendant asserts, without a supporting citation, that "a difference in estimates is not evidence of breach of contract or bad faith[.]" (Doc. 30 at 5). Insurers, however, "cannot lowball claims or delay claims hoping that the insured will settle for less." *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d 1111, 1116 (D. Ariz. 2003); *see also Daly v. Royal Ins. Co. of Am.*, No. Civ. 00-0040-PHX-SRB, 2002 WL 1768887, at *16 (D. Ariz. July 17, 2002) ("Summary judgment is not appropriate on the bad faith claim involving [a defendant's] alleged efforts to 'low-ball' the Plaintiffs").

Moreover, Defendant fails to articulate a sufficient basis for its lower valuation beyond the conclusory statement "that reasonable minds may have differed in terms of the evaluation of personal property items[.]" (Doc. 30 at 5). "Such a conclusory statement, however, does not demonstrate that Defendant's acts and omissions in investigating, evaluating, and processing [Plaintiffs'] claim were not unreasonable as a matter of law." *Young*, 296 F. Supp. 2d at 1116 (finding that a bad faith claim must survive summary

judgment over a defendant-insurance company's argument "that the parties here clearly had a good faith dispute about the value of [the plaintiff's] claim" without satisfactorily demonstrating why the value was "fairly debatable"). Defendant points to evidence that it immediately acknowledged coverage for the loss and ultimately paid Plaintiffs' claim, but "the fact that an insurer ultimately pays a claim [does not] preclude a finding of bad faith[.]" (*See* Doc. 30-1; Doc. 30-2); *see also Zilisch*, 995 P.2d at 279–80 ¶ 20. Defendant's vague correspondence likewise cannot establish its reasonableness as a matter of law. (*See* Doc. 30-9 (email regarding inspection of damaged items stored by Pelican); Doc. 30-10 (the same); Doc. 30-11 (coverage letter); Doc. 30-12 (replacement cost coverage statement)). Conversely, Plaintiffs provide that the "claims adjuster [ ] could not be reached for sometimes more than a week at a time," and the claim was only processed after Plaintiffs contacted the claim adjuster's manager. (Doc. 31 at 7). The record indicates that Pelican had similar communication issues with Defendant (Doc. 31 at 34 (email from Pelican stating that "[w]e have attempted to call the adjuster . . . and he has not returned our call in about a week")).

Here, the unresolved discrepancy in Pelican's valuation and that of Defendant creates a genuine dispute of fact regarding the reasonableness of Defendant's handling of Plaintiffs' claim. (*See* Doc. 30 at 4; Doc. 30-7 at 2). "While an insurer may challenge claims which are fairly debatable, its belief in fair debatability is a question of fact to be determined by the jury." *Zilisch*, 995 P.2d at 279 ¶ 20 (internal quotation marks and citation omitted). Accordingly, Defendant is not entitled to summary judgment on the claim of bad faith because, on this record, the Court cannot say as a matter of law whether Defendant's valuation is "fairly debatable." *Zilisch*, 995 P.2d at 280 ¶ 22 ("fair debatability is a necessary condition to avoid a claim of bad faith"). Additionally, Defendant's communication delays throughout the claim handling process provide further evidence to support Plaintiffs' claim of bad faith.

**B.     Breach of Contract**

Defendant also argues that it is entitled to summary judgment on Plaintiffs' claim

for breach of contract. (Doc. 30 at 5).

### 1. Legal Standard

"An insurance policy is a contract between the insurer and its insured." *Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 158 P.3d 209, 212 (Ariz. Ct. App. 2007). Under Arizona law, the elements of a breach of contract claim are: "(1) the existence of a contract; (2) breach; and (3) resulting damages." *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016).

### 2. Analysis

Here, it is undisputed that Plaintiffs' insurance policy is a contract between the parties. *See Liberty Ins. Underwriters, Inc.,* 158 P.3d at 212. Defendant argues that it did not breach that contract because it paid all benefits due to Plaintiffs in a timely manner, including all legitimate alternative living expenses owed to Plaintiffs under the policy. (Doc. 30 at 5). Conversely, Plaintiffs argue that Defendant failed to fully cover Plaintiffs' loss and specifically failed to pay for temporary lodging on the night of the incident and near the completion of restoration work on Plaintiffs' home. (Doc. 31 at 2–3, 8). The record is undisputed that Defendant did secure temporary lodging for Plaintiffs starting on April 25, 2017; one day after Plaintiffs first contacted Defendant to report the incident. (Doc. 31 at 1–2). Additionally, the temporary lodging was only available to Plaintiffs until June 28, 2017, even though remodeling work at Plaintiffs' home was not complete until July 12, 2017. (*Id.* at 7 (citing *Id.* at 40, 42)).

Without a copy of the insurance policy, the Court cannot determine the extent of Defendant's obligations to provide temporary lodging thereunder, other than to recognize that Defendant had some obligation based on the parties' course of dealing. *See supra* Part I(A) n.2. Accordingly, the Court finds that Defendant, as the moving party, fails to carry the initial burden of production required to prevail on its motion for summary judgment with respect to the breach of contract claim.[6]

---

[6] "A moving party without the ultimate burden of persuasion at trial . . . has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "[T]o carry its burden of production, the moving party must either

Additionally, there is evidence in the record to create a dispute that Defendant failed to fully cover Plaintiffs' claim for damaged personal property based not only on Plaintiffs' affidavit to that effect, but also the discrepancy between Pelican's valuation of Plaintiffs' personal property and the amount paid by Defendant. *See supra* Part III(A). Accordingly, Defendant is not entitled to summary judgment on the claim of breach of contract.

## IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 30) is **DENIED**. The Clerk of the Court shall not enter judgment at this time.

Dated this 13th day of December, 2018.

_____
James A. Teilborg
Senior United States District Judge

---

produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. "In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." *Id.* Such is the case here. On the record before it, the Court finds that there is a genuine dispute of fact regarding whether Defendant breached the insurance contract by failing to provide Plaintiffs with sufficient temporary lodging.